Good morning, Council. This is 4180196. Ashmore Board of Trustees of the Bloomington Police Pension Fund. For the appellant is Attorney Craig Mielke. Is that pronounced correctly, sir? Correct. And for the appellee, James Dunbar-Vonig. Mr. Mielke, you may proceed. Thank you. It please the court, Dr. Craig Mielke on behalf of Officer Mark Ashmore. Council. As you know, this is an administrative review action from a police pension board decision, and as such, we face the manifest weight standard of review. Throughout the pension board's brief, they often compare the findings of the pension board to a jury. Obviously, we'd like to point out some differences up front. A jury obviously renders typically a general verdict with no explanation, whereas a pension board by statute must make findings of fact and conclusions of law and must provide a concise and explicit statement of the underlying facts supporting its findings. And the very purpose of those statutory provisions is to facilitate meaningful judicial review, which brings us here today. The pension board made three specific findings in an attempt to support their decision. One, they purported to give greater weight to the report of Dr. Steele. That was the six-page report, which is inadequate and incorrect in several respects, but I think the pension board realized that alone was not safe today, so they made some other findings. They purported to give zero weight to the reports of the other two examining doctors, that would be Dr. Anderson and Dr. Albert, and the reason for that, by the pension board's own words, were that those reports, Anderson and Albert, were that they, quote, were unanimously based their opinions on appellant's subjective self-reported symptoms. And I'm going to point out what that's completely dead wrong. The pension board also just ignored the decision or the report of Dr. Monaco. Dr. Monaco was retained by the city of Bloomington, who, of course, is not a party to these proceedings, but the city retained Dr. Monaco for purposes of an independent medical exam. In my client's workers' compensation case, Dr. Monaco's report was completely favorable and found Officer Ashmore disabled. The pension board also ignored the findings of Dr. Greenberg. Dr. Greenberg was one of Officer Ashmore's many surgeons who found Officer Ashmore unable to return to work. Finally, the pension board purported to find my client was not credible. A 20-year police officer with no blemishes on his record, and they gave three specific reasons why they found him less than credible. One was supposed misinformation he gave to Dr. Greenberg. Second was some statements he made in regards to why he did not have a procedure known as a ganglion block. And third, what the pension board found to be some inconsistencies with the testimony of Mark Ashmore compared to that of Lieutenant Williams. We went to great detail to point out exactly how and why these three alleged inconsistencies were completely wrong and just unsupported by the record. In response to that, the pension board says nothing. They say, well, it's their, you know, telling the court, find it yourself, I guess. I thought that's why we were here, to find out if the pension board's decision was or was not supported by the manifest weight of the evidence. As to the statements by the pension board, which, again, I think are critical of their decision, that the reports from their chosen physicians, Dr. Albert and Dr. Anderson, were based solely on my client's subjective complaints, that just borders on ludicrous. This is not some back injury where my client has a back strain and where all the medical evidence is normal, and my client just complains he hurts too bad to return to work. This is a police officer who ruptured his biceps tendon, who had one surgery to put the tendon back together, and then had no less than three additional surgeries to repair damage to the nerve in the left arm. As a result of the injury and these surgeries, my client's arm is physically different than it was before. Dr. Greenberg, who did the last surgery, the fourth of four surgeries, visualized my client's inside of his arm, and his report of operations says that there was a, quote, obliteration of normal anatomy inside my client's arm. These are not subjective symptoms. My client has very specific findings. There were MRIs done before the surgery. There was electrical testing done. There's no question that the reports of Albert and Anderson, along with the findings of Dr. Greenberg and those of Dr. Monaco, were based on hard, objective findings, things you could see on an MRI, things that the doctors, especially Greenberg, saw themselves in the changes to the anatomy inside this officer's arm. We also point out that these attempts at attacking Officer Ashmore's credibility, even if there is some factual basis for them, are of absolutely no legal consequence. All of these issues are collateral. None of the alleged inconsistencies go to any of the elements that a police officer is required to prove to prevail on a pension disability case. And we provide the case law that says impeachment on collateral issues is improper and cannot be considered by the finder of facts to attack the credibility of the witness. So at the end of the day, and I'm going to cut right to the end here, I think on a manifest way to the evidence, I suppose you look at the scales of justice, right? What does the pension board have on their side of the scale? Once we look at their findings on credibility and find there's no legal or factual basis for them, and once we take away their finding that Albert and Anderson's reports were based on solely subjective complaints, which they literally weren't, all the pension board has in a record that consists of thousands of pages and hours of testimony is a six-page report from Dr. Steele, which is incomplete on its face. It misses things in the medical records. It doesn't contain all of the treatment and, in fact, acknowledges that my client has permanent deficits. Dr. Steele doesn't explain how a police officer with permanent deficits can perform his job, other than I think he said, well, police is mainly an administrative job. To me, that's also astounding. Police officers at our firm represent several police unions around the state. Officers get injured all the time restraining people, assisting citizens. Here, the officer was pushing a car. Now, on Ashmore's side, we have got the report of Dr. Albert. That was a pension examiner chosen by the pension board. We've got the report of Dr. Anderson, another doctor chosen by the pension board. We've got the report of Dr. Monaco, a doctor chosen by the city of Bloomington. We've got the records of Dr. Greenberg, which clearly find my client disabled. We've got the testimony from the city's work camp administrator, a lady by the name of Elizabeth McCain. She was asked, are you aware of any evidence that would indicate Mark Ashmore is not disabled? She said no. It was in evidence that my client was terminated by the city of Bloomington because he couldn't do his job anymore. We have the concrete medical evidence of four surgeries. We have got the objective tests of MRIs and Dr. Greenberg having visualized my client's arm and finding an obliteration of his normal anatomy. We also have surveillance videos. Apparently, I forget if that was the city in regards to the workers' compensation case or the pension board, but there were surveillance videos done of my client. And Dr. Albert and Dr. Anderson reviewed those and commented on those videos and said, there's nothing in these surveillance videos that would indicate that Officer Ashmore is anything other than disabled. And it's important to point out here that Dr. Steele didn't even bother to look at those videos. Someone, again, I forget whether it was the pension board or the city, did some type of social media search of Officer Ashmore's, I suppose it's Facebook page or whatever it may be. And, again, Dr. Albert and Dr. Anderson, they both reviewed that evidence, that investigative material, and, again, they found nothing in my client's social media postings which would indicate that he was anything other than disabled. And, once again, Dr. Steele didn't even bother to comment on those. So on the scales of justice, it is overwhelming that Officer Ashmore is disabled. On the case law, we point out that there's not a single case that has ever upheld a pension board's finding of no disability based on a single doctor's report. And, yes, there are cases where there was one doctor against two or three and the pension board would affirm, but in all of those cases, the court, and there's some from the Supreme Court, some from the appellate court, they reviewed the record and they found other supporting evidence that the officer was not disabled. Often layperson testimony on the issue of disability, often layperson testimony on whether the accident ever happened in the first place. This case is not a he said, she said kind of case. This is not which witness are you going to believe kind of case. The evidence is essentially undisputed and at least above point of conclusion. And then lastly, I would request if the court sees fit to accept our argument and reverse the pension board decision, that I would also request that the court find that Officer Ashmore was injured in the line of duty. That was an issue that was admittedly not reached by the pension board, but as we point out in our brief, an injury to a police officer pushing a vehicle that had been stuck is not new to the courts, and I forget the name of the case that's in our brief, but at that very context. You made these arguments at the trial court and administrative review, did you not? Yes. The trial court didn't buy it? What explanation was given? Well, as I often say, I didn't say that to this justice, but I've said it before. Thank you trial court judge for your advisory ruling because as we sit here today, we really legally don't care. I suppose it's nice to understand what the trial court did, but we're here to review the pension board decision. I'm not going to comment on the politics of a local judge trying to support for a local police pension board. I should hope not. I would hope not too. I would hope not. And again, I am not going to claim there was any bias against my client because I can't, but let's face it, a police pension board is hardly a jury that was picked independently. I mean, a police pension board is two current officers, a retired officer, and two citizens chosen by the mayor or village president. So it's certainly not a jury that I ever would have picked, but yet you do give them the manifest weight standard of review, but again, they have the statutory obligation to make findings, and they did. And all we did was to read the pension board decision. It complies. It looks good on its face. But when we actually look at the evidence in the case, the findings of that are unsupported by the evidence. They're totally contrary to the evidence, and they ignore substantial evidence. Thank you. Okay, thank you, counsel. Mr. Dobrovony? Okay, please report, counsel. Manifest weight. That's why we're here. And I don't think he's met his burden to show that any of the facts that the board determined should be overturned. They relied heavily on one doctor, Dr. Steele. He had a 12-page CV outlining his accomplishments and achievements. Found that, yes, he sustained this injury, but he could still do the job of a police officer. Even Dr. either Alpert or Anderson. Pausing right there. Yes. To what extent is Dr. Steele's opinion regarding that affected by his stated position that the plaintiff's job is administrative in nature? Largely is administrative in nature. He did review the job. Wasn't he just a patrol officer? Patrol officer, yes, Your Honor. Well, you're more experienced with this than I, Mr. Dobrovony. We've got a lot of prosecutors up here. Well, okay, but when you have someone who's a police officer out in the street, how do you talk about that as just being administrative in nature? To me, that sounds like a guy sitting behind a desk. I would venture to say 95% of the time, the officer is not engaged in chasing down a suspect. He's not engaged in separating parties. It's largely patrol, observing, filling out my report from what I did today. I stopped somebody for a speeding ticket or whatever. True, there are times when they must respond with the greatest of physicality. But each of the doctors basically said here, he's got full range of motion. He's got full strength. There are no neurological deficits. He complains of pain, which is a subjective complaint. So on that basis... What about the surgeries and the other testimony concerning... The surgeries don't have to get you back to 100% of what you were before. You could still do the job. I wasn't being clear. I thought Mr. Milkey's point was a good one in contrasting this case with another where we have the famous soft tissue injuries that don't really show up, that might be present, but it's hard to find any objective basis for it. Why is this person complaining about the pain or difficulty? Whereas here, we had multiple surgeries and we have a description of what his physical condition was. It certainly is not in that hypothetical that I just gave you. That is, we have no reason to think that these are psychosomatic symptoms or that there's anything about this other than he's been injured. He was in no question about that. He underwent the surgeries. But to say that we've got to get you back to where you were before you were injured is not true. If your recovery still allows you to do the job, you may only be 85% of the person you were before. Did it allow him to do the job? I thought the police department fired him. We don't have any call over what the police department does or doesn't. We can't tell them to hire somebody or fire somebody. Isn't this kind of a Rule 23? Catch-22. Catch-22. Catch-22, any difference? Yeah, it probably is. Where you have, on the one hand, the police department says, you can't do the job, we're going to fire you. On the other hand, the pension board says, well, I can give you a pension because you're just fine. Now, isn't there something wrong with that picture? It's the picture we have, Judge. Well, what about the... If a sniper is really good, nobody shoots back at him. It's just administrative. All they have to do is lay in a ditch with that stuff over them and take out whoever it is they're supposed to shoot at. I'm talking about military. So is their job administrative because 99% of the time they may not be at risk or have to do anything that's important? If most of their time is spent in training or whatever... They've already been trained. Already been trained. And admittedly, the stress of the position is unique. Whether it's public safety officers or paramilitary or military, it's a unique stress. Well, here your doctor says he had a current restriction with no lifting over 5 pounds using his upper left extremity and there are permanent deficits in his left shoulder and his left elbow. I don't want that guy pulling somebody out of a car and having the guy that he pulls out of the car take his weapon away from him. Because he can't physically manage the obstreperous... Not a terrorist, but a guy that objects to being pulled over and decides to be confrontational with the police officer. I understand what you said about the vast majority of the time it's observation and community policing. But to say that this is an administrative job just boggles my mind. I don't know that he said this is an administrative job. It's largely administrative. Largely administrative. And he did directly reference, I reviewed the job description. I don't know if the other doctors did that. In this particular instance, all the doctors are saying he's got full strength, he's got full range of motion, and he has no neurological deficits. To what extent should the board or can this court consider the fact that he was fired by the police department based on its determination he couldn't do the job? I don't think the board can consider that. Why not? What bars them from doing so? Because they don't have any power to hire or fire themselves. No, no, I didn't say... Okay. I'm just... I don't know... But that was before, wasn't this the situation? I don't know the timing of that. Whether he applied, and he would have had to have applied before he stopped being a police officer by employment status. If you're not a police officer to begin with, you cannot apply. You've lost that benefit under the pension code. So he was certainly a police officer at the time he applied. Subsequent actions by the city dictated otherwise, or by his own volition, he didn't go back to work, I don't know. Didn't Dr. Steele say, in fact, that he reviewed the job description for patrol officer and that the vast majority of plaintiff's requirements are administrative in nature? Yes. He said he carefully reviewed the duty requirements. Yes, he did. Which included the protection of life and property, prevention and suppression of crime, apprehension of criminal offenders, regulation and control of traffic, recovery of lost and stolen property, preservation and maintenance of social order and public peace, the ability to overcome any and all potential hazards. And he concluded that that was administrative. Largely. Largely. We don't have to accept that, do we? Frankly, this Dr. Roney doesn't sound to me like it makes any sense at all. Well. And if it doesn't, then what do you got? I think you have to give great deference to the finder of fact. Well. We are the finders of fact. Okay. And as such. Well, but guess I want to break it down. This is a witness. And the witness came up with this analysis that the finders of fact bought, apparently. But it's the analysis that doesn't make any sense to me. I don't understand largely administrative. Just the list of things. Apparently the witness concluded correctly that this is what police officers out in the street might have to do. You know. I don't. We don't have to buy that. I don't know why the board did. But it just seems to me. And I suppose. I don't want to be blindsided here. I want to give you a chance to explain why should we. Why am I wrong that that description makes no sense. In the Sanders case. I believe it is a fourth district case. They point out that, you know, these boards in particular are in the best position to make that determination. Because they have police officers on that board. They're the ones that are experienced with it. I want to break it down further. Okay. I want to ask you about Dr. Steele's description and then conclusion. It's that. Pausing right there. Makes no sense to me at all. I just don't see how that can follow. Before we get to whether the board should have bought it or not. Justify. Tell me how Dr. Steele's description of these duties. And then his. Largely administrative. How that makes any sense. Based on my experience. I would have to agree that the police officers duties are largely administrative. I agree also that at certain times they're beyond the pale as far as response and physicality that needs to be provided. But largely, and if you've got the physical ability to do it. Why should the board accept subjective complaints when even the officer himself told one of the doctors. I've been to these three IME guys. They're all said I'm disabled and I can't do the job anymore. Well, that wasn't the case. Not all of them said that. So, that combined with his lack of candor. You know, they had credibility issues throughout this. They chose to believe Dr. Steele. And disregard the applicant's testimony who has the burden of proof. If we believe Dr. Steele's report just makes no sense. How can we affirm what the board did to him? If you believe it makes no sense, then you have to completely disregard his report. Yes. How can we believe. How can we affirm the board. You can affirm the board on the basis they didn't believe the officer himself. You can affirm the board basically on his own doctors that said he's got complete range of motion, he has complete strength, and he has no neurological deficits. When you as the former officer are sitting there hearing this as a finder of fact, guess, well, then the guy can do the job. Credibility determinations, as you know from your own experience, are ephemeral at best. That's the right word. It's based on sometimes watching the witness testify, their mannerisms, the way in which they speak, the way they look out the window as opposed to looking to the questioner or whatever the case may be, the body language. In the case of these reports, they can look at curriculum vitaes to see, you know, who is this guy? Does he know what he's talking about? Does he have experience? What does he do? So it's a hard job to make those credibility determinations, but that's what they did in this instance, and I think the board should be affirmed. About Mr. Milkey's argument that the inconsistencies, if they were inconsistencies in the plaintiff's own testimony, are collateral effects. Well, he also goes out to say, well, he was never confronted with these and impeached. That's not the role of the board to impeach him. He presented his testimony. Witnesses were called that contradicted that testimony. I don't know what else you do. Anything further? No, Your Honor. Okay. Thank you, Counsel. Mr. Milkey, any rebuttal, sir? Sure. Okay. The jury, I suppose, is given the privilege of not believing a witness and they don't have to explain why. Pension boards don't have that privilege. Pension boards, by statute, must give an explicit statement of the underlying facts. This pension board didn't say, based on their observations of the demeanor of Mark Yeshmer, they didn't believe him. They came up with three specific facts that they thought attacked his credibility. Mr. Del Boveroni was correct. They did recall Lieutenant Williams, and I think that was some attempt to create a Catholic between the lieutenant's testimony and Officer Yeshmer's testimony. But as we point out in our brief in great detail, there is no Catholic between their testimony. None. And the pension board, in their brief, doesn't contradict what I say in my brief. They don't say, hey, Mr. Milkey's misreading the record. There really is a Catholic. Here it is. There is no Catholic between Lieutenant Williams and my client. So naked conclusions of credibility don't work for a pension board. In this case, you ask, the officer is terminated by the municipality. Can that be considered? Well, of course it can. It's evidence in the record. It's lay evidence of disability. I've had cases where my officer is disabled, but the police department has permanent life duty, and they keep the person working. Well, that's certainly evidence that's been used against me. And if they give my officer permanent life duty and a paycheck, the pension board can't award him a pension. Is Mr. Don Ramone correct that he had to apply for this pension while still working as an officer? Oh, yeah, absolutely. But what happens with a police officer, once they're disabled and can't work, then the statute goes PETA, Public Employee Disability Act kicks in, and then you get a one-year of salary, a 100 percent salary while you're disabled. And the application almost certainly would have been filed during that period of PETA. And in this case, the evidence reflects once the one-year of PETA was up, an officer actually was paid two-thirds of his salary by the city under workers' comp. And that was paid through the pension period. I also asked him about to what extent could the board be aware of or could consider the fact that the city terminated his employment on the grounds he couldn't do the job. Yeah, I think that's just a lay evidence of disability. Well, I bet you answered my question. To what extent was the board aware of that, and to what extent could the board consider it? My client testified to it. Pardon? My client testified to it. Oh, he did, before the board? Yeah. Oh, yeah, this is in the record. And then the last thing I'd like to point out, Jim and I get along great, we have a lot of pensions hearings with his office, so none of this is meant to disrespect Jim in any way, shape, or form, believe me. But the pension board got it wrong when they said that there was no evidence by the other doctors that there was full range of motion, et cetera. And this is in my brief. Dr. Alford found weakness and decreased range of motion in the left elbow. Dr. Anderson did multiple objective tests that indicated nerve damage and also found a lack of motion and strength in the elbow. Dr. Monaco, who is the INA doctor, found diminished sensation, tingling, 30 degrees lack of motion in the left elbow. He noticed an 18-centimeter scar on his elbow and went through the neurologic stuff and concluded that my client suffers from radial nerve palsy from compression of the posterior interosseous nerves. And this is a very specific damage to a very specific nerve in the officer's arm that has very specific loss of motion, loss of strength resulting. So this is anything but the subjective omen case. And once again, I would request that you please reverse the decision of the pension board and also to exercise your discretion for the condition of the economy and find in favor of my client on the one that you questioned about. Thank you, counsel. We'll take this matter into the advisory team. Recess.